## Baker Estate

126

*Saul, Ewing, Remick & Saul,* for accountant.

*Lois G. Forer* and *Louis Marion,* for Commonwealth.

KLEIN, J., February 1, 1957.—Lillie I. W. Baker died on March 7, 1931, leaving a will by which, inter alia, she devised and bequeathed her residuary estate to her trustees in trust to pay the income therefrom to Benjamin Williamson Keen for life, and upon his death (which is stated to have occurred on August 17, 1935) bequeathed one fourth thereof (the fund presently accounted for) to her trustees as a perpetual endowment, in memory of Margaret Hepburn Walker Watson, to pay over the income to the Trudeaux Sanitorium, Saranac Lake, N. Y., half-yearly, for the general purposes of the sanitorium. By codicil to her will testatrix directed that sums of $50 a month and $25 a week should be paid respectively to L. A. McM. Davis (Mrs. T. Staunton Davis) and Agnes Hunter for the terms of their natural lives.

The statement of proposed distribution contains the following explanation:

"Under prior accountings, there was awarded to the Trustees certain assets then indivisible for liquidation and distribution as they should be converted among the four trusts created by the decedent in her Will. As a convenient method of distribution, the said annuities were paid out of the income from the un-

divided fund and the balance of the income then distributed among those entitled to the income from the residuary estate. In view of liquidation in the undivided account, income is insufficient for the payment of the annuities, and the deficit is a charge against the four trusts created under the Will."

The present account is an income account only, presumably in accordance with section 702 of the Orphans' Court Act of 1951, and is stated to be an accounting of the income of the fund awarded to the present accountant by adjudication of Hunter, J., dated February 16, 1953, under which the fund was awarded to the accountant to pay the income to the Trudeau Sanitorium, Saranac Lake, N. Y., subject to the annuities to Louise A. McM. Davis and Agnes Hunter.

Louise A. McM. Davis and Agnes Hunter, annuitants, both appear to be still living, and the liability of the fund for the payment of their annuities continues.

All parties in interest are stated to have had notice of this audit.

It appears from the statement of proposed distribution that Pennsylvania transfer inheritance tax has been paid in full, and no claim for tax was made by the Commonwealth at the audit.

Paragraph (g) of the statement of proposed distribution recites that under date of September 28, 1953, the Trudeau Sanitorium, a corporation organized under the laws of the State of New York, changed its name to Trudeau-Saranac Institute, Inc., and a photostatic copy of the certificate of change of name is annexed to the notes of testimony. Later, on December 13, 1955, the name was changed to Trudeau Foundation, Inc., and a photostatic copy of the certificate of change of name is annexed to the notes of testimony. It further appears from the statement of pro-

posed distribution that at a meeting of the Executive Committee of the Board of Trustees of the corporation, held on October 8, 1954, the committee recommended to the Board of Trustees that the sanatorium be closed for the care of tubercular patients as of December 1, 1954, but that research work should continue and every effort should be made to conserve and convert patient care funds to such purposes. This action was ratified by the trustees at their annual meeting held November 15, 1954.

Subsequently, at a special meeting of the Board of Trustees, held March 29, 1955, resolutions were adopted providing for the maintenance of the laboratories at Saranac Lake, the continuance of research and investigation into the field of pulmonary diseases and the continuation of the teaching program. The maintenance of the sanatorium and the reception, care, and treatment of persons afflicted with tuberculosis and other diseases of the lung were abandoned.

The question presented by the accountants is whether the Trudeau Foundation, Inc., successor to Trudeau Sanatorium, is continuing the general purposes for which it was founded and is entitled to continue to receive the income from the fund established under testatrix's will.

Notice of the audit was given to the Attorney General of Pennsylvania. Lois G. Forer, Deputy Attorney General, and Louis Marion, Special Deputy Attorney General, were present at the audit pursuant to notice and stated that the Commonwealth was not opposing the continued distribution of income to the corporation.

John M. Bovey, counsel for the Trudeau Foundation, Inc., traced its corporate history from its organization to the present date. From his testimony it appears that the institution was first incorporated un-

der the laws of the State of New York, on February 26, 1889, under the name of "The Adirondack Cottage Sanitarium". In 1916 the name was changed to Trudeau Sanatorium and in 1953 to Trudeau-Saranac Institute, Inc. In 1955 the name was again changed to its present corporate name, Trudeau Foundation, Inc. All of these changes were made in compliance with the laws of the State of New York.

When the corporation was originally formed in 1889, its purpose was stated to be:

". . . the establishment of a sanitorium or retreat for the reception, care and treatment of persons afflicted with pulmonary, bronchial, and malarial diseases, affections of the throat, digestive system and nervous system and kindred maladies."

In 1917 they expanded their original corporate purposes by adopting the following change in their constitution and bylaws:

"Article 2. The objects and purposes of the sanatorium are (1) the reception, care and treatment of cases of tuberculosis and of other diseases of the lungs; (2) the prosecution of researches into the causes, the nature, and the treatment of said diseases; (3) the teaching of all that pertains to the said diseases; (4) the establishment and maintenance of a sanatorium and laboratory, together with cottages or buildings in connection therewith, for the said purposes."

Upon being informed that they had exceeded their corporate powers, the trustees induced the New York legislature to correct the situation by passing a statute called Chapter 654 of the Laws of 1920, by which the original certificate of incorporation was amended to ratify and legalize the changes set forth in article 2, supra.

It appears further from the testimony that this institution was founded in 1884 by Dr. Edward Tru-

deau, who himself was suffering from tuberculosis. It was the first sanatorium for the treatment of tuberculosis in this country. Today it is regarded as one of the outstanding research and teaching institutions of the world in this field of medicine and operates on an annual budget of $400,000. It conducts two laboratories, the Department of Radiology and Bacteriology, and the Industrial Hygiene Department. It receives grants from such sources as the United States Public Health Service, the National Institute of Health, the American Cancer Society, the Atomic Energy Commission and many of the Nation's largest industrial companies. It also conducts the only school in the country dedicated solely to the problem of tuberculosis.

All of these projects were initiated in Dr. Trudeau's lifetime and were functioning when the testatrix died.

With the tremendous developments in the prevention and care of tuberculosis and the many amazing scientific discoveries, the incidence of the disease and its mortality rate have dropped sharply, and the need for beds for the care of patients has declined. The need for further research, however, remains unabated. The institution, therefore, in accord with the accepted trend in leading medical circles, closed its clinical department and is now concentrating on its research and teaching programs.

It has been suggested by the Attorney General's representatives that the situation before us is "a cy pres matter". Mr. Wells, representing the accountants, has rejected this suggestion. He took the position that "the institution still exists and is carrying on its purposes".

In the opinion of the auditing judge, this is clearly not a case for the application of the cy pres doctrine. Cy pres becomes necessary ". . . if the charitable purpose for which an interest shall be conveyed shall

be or become indefinite or impossible or impractical of fulfilment. . . .": Estates Act of April 24, 1947, P. L. 100, sec. 10. See Girard Will Case, 386 Pa. 548, 569 (1956).

The gift of income in the present case is "for the general purposes of the Sanitorium". Trudeau Foundation, Inc., is the same corporation as Trudeaux Sanitorium designated by testatrix in her will. Under its charter, constitution and bylaws it possesses general powers to treat patients suffering from tuberculosis and other diseases of the lung, to conduct teaching and research programs and to establish and maintain a sanatorium and laboratory, "together with cottages or buildings in connection therewith, for the said purposes".

These were the powers possessed by the corporation in 1929 when testatrix executed her will, in 1931, when she died, and also at the present time.

It is entirely a matter for the sound judgment of the Board of Trustees, and not for any court, to determine in what manner the general purposes of the corporation can best be effectuated. It is completely within their discretion to discontinue their clinical work and to devote all of their efforts to research and teaching. This is a natural development in view of the great success the medical world has had in combating the dreaded diseases of the lung.

The auditing judge therefore concludes that the charitable purpose for which testatrix bequeathed the income of this trust has not "become indefinite or impossible or impractical of fulfilment", but continues even though one of the functions previously conducted, to wit, the treatment of patients, has been discontinued. Testatrix's gift was "for the general purpose" of the corporation, not for any designated, specific purpose. Trudeau Foundation, Inc., is accordingly en-

titled to the income remaining after the payments of the annuities, and it will be so awarded.

In view of the spectacular progress that is being made in the field of medicine, especially pertaining to the prevention and care of tuberculosis, the auditing judge directs the accountant to file an account at the expiration of 10 years from the date of this adjudication in order that the court may at that time review the entire situation. . . .

Leave is granted to the accountant to make all transfers and assignments necessary to effect distribution in accordance with this adjudication.

And now, February 1, 1957, the account is confirmed nisi.